64 P.3d 1258 (2003)
STATE of Washington, Respondent,
v.
Henry J. BRADY, Appellant.
State of Washington, Respondent,
v.
Darrell L. Jones, Appellant.
State of Washington, Respondent,
v.
Alandis B. Jones, Appellant.
Nos. 26620-2-II, 26761-6-II, 26712-8-II.
Court of Appeals of Washington, Division 2.
March 11, 2003.
*1259 Joanne E. Dantonio, Stenberg Law Office, Tacoma, WA, Eric Michael Fong, Rovang Fong & Associates, Thomas E. Weaver, Port Orchard, WA, for Appellants.
Randall Avery Sutton, Kitsap Co Prosecutor's Office, Port Orchard, WA, for Respondent.

PART PUBLISHED OPINION
ARMSTRONG, J.
Henry Brady, Darrell Jones, and Alandis Jones[1] appeal their jury convictions for first degree burglary, arguing that the trial judge unreasonably limited their voir dire jury questioning by altering each party's allotted time part way through questioning. We agree and, accordingly, reverse and remand for a new trial. The defendants raise a number of other issues, including whether the court (1) should have dismissed the charges because of the State's discovery violations, (2) should have severed the cases for trial, (3) improperly excluded potentially exculpatory hearsay statements, and (4) should have dismissed for insufficient evidence. Of these, we discuss only those issues that are likely to arise on retrial or that would require us to dismiss a charge.

FACTS
One night, Darrell Jones got into a fight with another young man at a house occupied by several young people. Darrell Jones had come to the house with Henry Brady and Alandis Jones. After Brady encouraged Darrell Jones to break up the fight, the group (including Brady, Alandis Jones, and Darrell Jones) left. As they left, one member of the group yelled back to the house, "Anybody that doesn't want to die needs to leave because I'm going to come back with *1260 my Mac 10 and shoot up the place."[2] Report of Proceedings (RP)-Brady at 1706. One witness said that Brady yelled the threat.
After a while, a car pulled up outside the house with its lights off and all four doors opened. Someone pounded on the front door. When no one responded, someone kicked the door open, and one person came in through a window. The lights in the house were out, but several witnesses believed there were at least two intruders. One intruder had a gun and pointed it around the room, yelling at everyone to get down. Witnesses identified Brady and Alandis Jones as two of the intruders. Someone in the house called the police.
When the police arrived, they saw three people run from the house to a waiting car. Police caught and handcuffed the runners Brady, Darrell Jones, and Alandis Jones. One officer saw Darrell Jones run to a nearby bush; the police later recovered a gun from near the bush.
Brady told police that he returned to the house to say goodbye to his girlfriend, Katrina. He did not see a gun, nor did he see anyone kick in a door. Katrina and her close friend both testified that Katrina was not Brady's girlfriend. Alandis Jones also denied being involved in the incident.
The State charged Brady, Alandis Jones, Darrell Jones, and the driver of the car with first degree burglary. The State also charged Darrell Jones, the alleged gunman, with unlawful possession of a firearm. The jury could not reach a verdict as to the driver, but found the other three guilty as charged.

ANALYSIS

I. Voir Dire
The trial court told counsel that it would allow the State and each of the four defense attorneys two chances to ask all the prospective jurors questions during voir dire. The court gave 45 minutes to the State to ask questions and allowed 30 minutes for each defense attorney during his or her initial questioning of the panel.
By the middle of the second day of voir dire, the judge warned the parties that they would begin selecting the jury at 11:00 A.M. the next day. At the beginning of the third day, the judge noted that the remaining two defense attorneys would have 30 minutes to ask questions that morning, and any time left would be split equally among all the attorneys. He warned that "there may not be a lot of it." RP-Brady at 732. Brady's attorney objected, noting that he had reserved some topics because he believed he would have another chance to talk to the potential jurors.
Near the end of the third day, all of the attorneys finished their first questioning session.[3] The court decided there was not enough time for the attorneys to have a second chance to ask questions, deemed that it had allowed adequate time and that all the "appropriate bases" had been covered, and ordered the attorneys to begin making their challenges. RP-Brady at 796.
All parties objected. Brady's attorney said that he had intentionally saved four or five topics to cover during the extra time he believed he was entitled to. He argued that the local rules allow each attorney two questioning sessions. Darrell Jones's attorney complained that the court said she would have another chance to speak to the jury. She had six areas she planned to discuss, some new and some she wanted to revisit. The State also objected because it expected more time to talk to the jurors as the court's original plan had allowed. The defendants concede that if the court had ruled from the beginning that each attorney would have only an initial 30 minutes to question jurors, the ruling would not be subject to attack. But they argue that the court abused its discretion by changing the procedure in the middle of voir dire. And when the court first mentioned a possible change in the procedure, *1261 two of the defense attorneys had completed their first questioning session and were unable to adjust to the court's warning of a change.
The trial court has broad discretion in determining the scope and extent of voir dire. CrR 6.4(b); State v. Frederiksen, 40 Wash.App. 749, 752-53, 700 P.2d 369 (1985). "The trial court is vested with discretion (1) to see that the voir dire is effective in obtaining an impartial jury and (2) to see that this result is obtained with reasonable expedition." Frederiksen, 40 Wash.App. at 753, 700 P.2d 369. Its discretion is limited only by the need to assure a fair trial by an impartial jury. Frederiksen, 40 Wash.App. at 752, 700 P.2d 369. We reverse the trial court's ruling on the scope of voir dire only for an abuse of discretion; and if the defendant shows the abuse substantially prejudiced him. State v. Davis, 141 Wash.2d 798, 825-26, 10 P.3d 977 (2000).
In Davis, the court found no abuse of discretion where the trial judge did not sua sponte question jurors about potential racial bias, even though the State and defense did not. Davis, 141 Wash.2d 798, 10 P.3d 977. In Frederiksen, the court found no abuse of discretion where the trial court refused to allow questions about potential jurors' attitudes toward self-defense. Frederiksen, 40 Wash.App. at 751-53, 700 P.2d 369.
But both Davis and Frederiksen dealt with specific questions or a specific line of questioning. Here, the issue is whether the court abused its discretion by changing the planned questioning during the middle of voir direafter two of the attorneys had completed what was intended to be their opening session but turned out to be their only session. Although the judge warned the parties that it might not give them as much time as it had intended, this warning was ambiguous and came after two defense attorneys had already completed their first questioning period. The judge's discretion includes assuring that an impartial jury is selected "with reasonable expedition." Frederiksen, 40 Wash.App. at 753, 700 P.2d 369. And certainly the court would not have abused its discretion by reasonably reducing the amount of time it had promised in the second questioning session. But here the court eliminated entirely the second questioning period, a decision the parties had no opportunity to adjust to. And the State does not dispute that defense counsel had the right to rely on getting at least some time for a second questioning of the panel. Indeed, the State also objected to the court's ruling. We hold that the court abused its discretion by altering the planned time for juror questioning without allowing the attorneys an opportunity to adjust to the change.
But the defendants must also show that the trial court's abuse of discretion prejudiced them. They point to an incident involving Juror 11, who was empanelled after answering only one question during voir dire. Later, during deliberations, the presiding juror sent the court a note raising a concern about Juror 11's possible short-term memory loss. The court briefly questioned the presiding juror but did not question or allow the attorneys to question Juror 11. The defendants argue that if they had been allowed a second questioning session, they would likely have discovered any problems with Juror 11's competence. The State counters that the defendants can not show that they would have asked any questions of Juror 11 in the second session. We agree. Without some showing that Juror 11 would have been questioned in a second session, the incident with Juror 11 does not demonstrate prejudice.
But defense counsel represented to the court at the time of its ruling that they had saved some topics to discuss with the jurors during their second session. The State does not dispute this. And the case involved at least one issue that requires "specific voir dire questions because of a real possibility of prejudice"racial overtones. Frederiksen, 40 Wash.App. at 753, 700 P.2d 369. Three of the four defendants in this case are black. In addition, the case involved other issues that "the local community or the population at large is commonly known to harbor strong feelings that may stop short of presumptive bias in law yet significantly skew deliberations in fact," such as firearms, and underage drinking and drug *1262 use. Frederiksen, 40 Wash.App. at 753, 700 P.2d 369.
The trial court has broad discretion over voir dire; it could vary the time allowed to each party, as it did here. But the problem is the way the court changed the rules. After designating the time it would allow each party, and after two parties had used the first part of their time, the court eliminated the promised second opportunity to talk with the jurors. And at least two defense attorneys had no chance to adjust to the change. In a complex case with these overarching issues and where it is undisputed that counsel reserved issues to discuss later, we find that the court's altered time allowance prejudiced the defendants.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HOUGHTON, J., and QUINN-BRINTNALL, A.C.J.
NOTES
[1] For the purposes of this opinion, we consolidate State v. Alandis Jones, No. 26712-8-II, with the consolidated case of State v. Henry Brady and State v. Darrell Jones, No. 26620-6-II.
[2] A Mac 10 is a semi-automatic gun.
[3] Voir dire spanned three days because, in addition to allowing the attorneys to conduct general voir dire, the court heard motions and scheduling conflicts, allowed extensive individual questioning of some jurors, questioned jurors on its own, and ended court early on at least one day.